UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| JILL TRUELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV412-210 |
| | ) | |
| J.C. PENNEY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Jill Truell, proceeding *pro se*, claims that she was forced to leave her job with defendant based upon her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Doc. 1.) Presently before the Court is defendant's motion for summary judgment. (Doc. 19.) For the following reasons, the summary judgment motion should be granted and this case should be dismissed.

Under Fed. R. Civ. P. 56(a), the Court must grant summary judgment where the movant "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." *Id.*

A genuine dispute as to a material fact can only be found "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation omitted). The movant meets this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23; *see also* Fed. R. Civ. P. 56(c)(1). After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). The non-moving party "must do more than simply show that there is some metaphysical doubt

2

as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). And "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

The basic facts here are not in dispute, since Truell has failed to offer any admissible evidence contravening defendant's showing.[1] Truell, an African-American, started working at J.C. Penney in 2006. (Doc. 20-1 (Truell dep.).) Over the following years, she received several promotions, eventually becoming a department supervisor. (*Id.* at 5.) In 2009, Tom Duff became the store manager. (*Id.* at 8-10.) He gave her a

---

[1] Truell failed to accompany her response with a statement of material facts, in violation of Local Rule 56.1. Under that provision, every supported statement made by the moving party is deemed admitted unless specifically controverted by a statement served by the opposing party. S.D. Ga. LR 56.1. Truell's factual narrative is unsworn and contains no citations to admissible evidence. (Doc. 23.)

The undersigned explicitly warned Truell that she was required to comply with Local Rule 56.1 and that she therefore *must* file opposing affidavits or other admissible evidence should she wish to contest a defendant's evidentially supported summary judgment motion. (Doc. 5 (order of instructions).) She failed to do so. Despite her *pro se* status, the Court is empowered to deem defendant's facts as admitted. *E.g., Smith v. Mercer*, 2014 WL 3398353 at *2 (11th Cir. July 14, 2014). Nevertheless, the Court is still required to "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact, before granting summary judgment." *Id.* (quotations and citations omitted).

negative review for 2010, but she admits that every employee received bad marks because the district manager was displeased with the store's performance. (*Id.* at 15.) Over the next year, she frequently approached Duff to request that he hire additional associates. (*Id.* at 17.) Duff refused. (*Id.*) According to Truell, Duff had helped white supervisors maintain a decent number of associates but he refused to do so for her. (*Id.*) He also had her immediate supervisor, Tonya Lightly, schedule her as the Manager of the Day ("MOD") more than any other department supervisor.[2] (*Id.* at 19.)

While working as MOD, Truell alleges that she had less time for her already understaffed department, so it suffered and "was never up to grade" for district manager visits. (*Id.* at 20-23.) Things came to a boiling point in August 2011. (*Id.* at 24.) A white associate in the jewelry department called for help; as a backup MOD, Truell was required to offer her assistance. (*Id.* at 28.) Truell was still carrying till drawers around to the registers, however, and told the associate that she

---

[2] Her assertion as to MOD scheduling is suspect. She submitted ten MOD schedules along with her response to defendant's motion for summary judgment. (Doc. 22 at 12-21.) Only on one of those days was she assigned more MOD hours than any other supervisor. (Doc. 22 at 20.)

4

would help as soon as she was able. (*Id.* at 29.) The assistant called Duff and told him that Truell refused to lend a hand. (*Id.*)

According to Truell, Duff called her into his office, and without asking for her side of the story, he "screamed at me. He yelled at me and he told me that he would fire me now." (*Id.* at 30.) While no overtly racist statements were made, Truell still asserts that "he racially insulted" her and he was acting in a discriminatory manner because he credited the white jewelry associate's word without ever giving her a chance to speak. (*Id.* at 32.) After the incident, she took a month long leave of absence. (*Id.* at 35.) When she returned to work, she retained her position, despite being written up for failing to help the white associate. (*Id.* at 37.) Nevertheless, the tension between her and "Mr. Duff increased more and that's why I finally quit, because I couldn't deal with him anymore." (*Id.* at 38.) She resigned in January of 2012. (*Id.* at 46.)

Truell raises a disparate treatment claim.[3] Since she has not offered any direct evidence of discrimination, she must support her case

---

[3] Truell has never explicitly raised a hostile work environment or constructive discharge claim. Her only description of the facts giving rise to her claim are that she was "accused of not helping a white associate in the store, and written up," because of her race. (Doc. 1 at 2-3.)

5

with circumstantial evidence. The Court will thus employ the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Truell thus bears the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004), *citing Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). "A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Id.*

While Truell is undoubtedly a member of a protected class, she has not shown that she was subjected to an adverse employment action. As the Eleventh Circuit has repeatedly explained:

> "memoranda of reprimand or counseling that amount to no more than a mere scolding, without any following disciplinary action, do not rise to the level of adverse employment actions sufficient to satisfy the requirements of Title VII." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1236 (11th Cir. 2001) (quotation and alteration omitted). The negative evaluation must actually lead to a material change in the terms or conditions of employment, such as "an evaluation that directly disentitles an employee to a raise of any

significance." *Gillis v. Georgia Dept. of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005). Although proof of direct economic consequences is not required in all cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Davis*, 245 F.3d at 1239.

*Barnett v. Athens Reg. Med. Ctr., Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013). Here, Truell freely admitted during her deposition that no negative actions were taken against her. She returned to the same duties, received the same pay, and was not subjected to any new onerous tasks despite taking a month-long leave of absence after being subjected to the store manager's vitriol. (Doc. 20-1 at 37-38.) Duff's outburst, even if unfair, simply does not amount to a "tangible adverse effect on [her] employment."[4] *Davis*, 245 F.3d at 1239.

---

[4] Even had she raised a constructive discharge claim, her factual narrative is insufficient to establish a *prima facie* case. Simply asserting that her manager treated her poorly on a few occasions is insufficient to show that defendant allowed or encouraged rampant discriminatory animus to develop in the workplace to the level that it compelled her to resign. *E.g., Munday v. Waste Mgmt., Inc.*, 126 F.3d 239, 241 (4th Cir. 1997) (supervisor's actions in yelling at plaintiff truck driver, directing other employees to ignore her and spy on her, and assigning her a route other than the one she requested, all resulting in her departure from the workplace on job stress-related disability leave, did not give rise to a constructive discharge claim). Nor has she offered facts sufficient to support a hostile work environment claim. *E.g., Edmond v. Univ. of Miami*, 441 F. App'x 721, 725 (11th Cir. 2011) (where supervisor, on a few occasions, told employee that he had a Haitian accent, yelled at him in the presence of patients and co-workers, and assigned him to patients who had animosity against Haitians, was insufficient to show that he suffered from severe or pervasive hostile conduct). While the Court does not condone the conduct described in those cases (or the conduct that Truell alleges in this case), it simply does not "sit as a super-personnel department" over defending businesses. *Elrod v.*

For all of the reasons explained above, the defendant's motion for summary judgment (doc. 20) should be **GRANTED** and this case should be **DISMISSED**.[5]

**SO REPORTED AND RECOMMENDED** this 3rd day of September, 2014.

*/s/ M. Smith*
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

---

*Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Meching v. Sears, Roebuck & Co.*, 864F.2d 1359, 1365 (7th Cir. 1988)).

[5] Since this case is due to be dismissed, defendant's motion to strike Truell's expert witness report is **DENIED** as moot. (Doc. 17.) Should the case survive, however, defendant may re-assert its motion at an appropriate time.